IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PAULA G. MESSIER,

    Plaintiff,

v.                                  CASE NO. 1:09-cv-00092-MP-AK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/

# **O R D E R**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) filed under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence and the decision of the Commissioner is affirmed.

**A.**    **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on January 13, 2006, alleging a disability onset date of April 1, 2003, because of degenerative joint disease of the back, knees, and ankles. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on October 30, 2007, and entered an unfavorable decision on November 15, 2007. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

B.     **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had a severe combination of multilevel degenerative disc disease (DDD), cervical spine; a history of lumbar laminectomy; and a history of right first toe degenerative joint disease (DJD), but that these impairments did not meet the listing requirements between her onset date of April 1, 2003, and her date last insured of September 30, 2003. The ALJ concluded that prior to this date Plaintiff could perform the requirements of sedentary work, as supported by the findings of Dr. Linder. While the ALJ found Plaintiff to have medically determinable impairments that could reasonably cause some degree of pain and limitations, he did not find the level of pain and limitation reported by Plaintiff to be entirely credible. Specifically, the ALJ referred to Plaintiff's description of her activities and lifestyle, the medical treatment required, Plaintiff's assertions and demeanor while testifying at the hearing, and the reports of the examining practitioners. Dr. Linder, a treating physician, found that Plaintiff was capable of sedentary work, and that Plaintiff "could lift [or] carry [ten] pounds; should avoid repetitive bending, kneeling, stooping, or squatting; should have frequent breaks and should not be required to stand, walk, or sit uninterruptedly for more than two hours." (R. 25). Also, supporting this finding is the medical report of Dr. Waeltz, who determined that Plaintiff had a functional range of motion in her lumbar spine. Further, Dr. Chang reported that Plaintiff did not display signs of acute distress. Thus, based on the medical reports and the nature of Plaintiff's work as a secretary, the ALJ found that Plaintiff was capable of performing her past relevant work during the time period at issue.

C.     **ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in discrediting Plaintiff's subjective complaints of pain

*Case No: 1:09-cv-0092-MP-AK*

and limitations without hearing testimony from a vocational expert.

The government responds that the ALJ properly assessed Plaintiff's functional capacity, including properly taking into account Plaintiff's lack of medical treatment during the relevant time period and her continued work for two years after Dr. Linder limited her to sedentary work. The ALJ noted that the objective medical evidence in the record demonstrates that Plaintiff's symptoms were relieved at least somewhat from conservative treatment. The government contends that an ALJ does not need to obtain testimony from a vocational expert when he finds that Plaintiff can perform past relevant work.

The issue thus presented is whether the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the

Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

*Case No: 1:09-cv-0092-MP-AK*

4.  Does the individual have any impairments which prevent past relevant work?

5.  Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past relevant work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E. SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Because Plaintiff's date last insured for benefits is September 30, 2003, the relevant medical records concern her condition prior to that time and after her onset date of April 1, 2003.

Dr. Linder began treating Plaintiff on November 17, 2000. (R. 130). Plaintiff reported that she experienced a pull and pain in her lower back when she put a plate in the oven. (R. 123). Her pain was a "6" on a scale of 1 to 10. (R. 126). X-rays taken the date of the initial examination revealed decreased joint space and osteophytes in the lumbar spine, but they did not show an acute fracture or dislocation. (R. 120). Dr. Linder found decreased sensation and

tenderness in the lumbar spine, and he diagnosed "status post previous lumbar spine surgical with acute aggravation versus exacerbation." (R. 120). Plaintiff was prescribed Relafen 500 mg and Flexeril 10 mg and was referred for physical therapy with a pass to perform sedentary work duties. (R. 121). Plaintiff returned on December 11, 2000, and stated that she had " 'gotten the best she [could] get' " and she had been working "to tolerance." (R. 117). Dr. Linder found increased range of motion and decreased tenderness in Plaintiff's lumbar spine, and he released her to sedentary work. (R. 117). He recommended that Plaintiff complete her medications and physical therapy, but respected Plaintiff's wish not to schedule follow-up care. (R. 117-118).

Dr. Busch examined Plaintiff on December 19, 2001, for complaints of toe pain. (R. 154). Radiographs revealed mild degenerative changes in the toe, possibly from synovitis. (R. 155). Dr. Busch diagnosed secondary myofascial syndrome and prescribed Ambien and Celebrex. (R. 155).

On October 20, 2003, Plaintiff indicated that she was suffering from depression, difficulty sleeping, and "pain to the right first [metatarsophalangeal] and also continued pains to the low back area, particularly the ischial area to the right side." (R. 149). In addition to her current medications of Evista and Vioxx, Plaintiff was prescribed Sonata and bodywork was recommended for myofascial release. (R. 149). Radiographs of the spine and pelvis revealed "decreased mineralization," "[d]iscogenic disease," and "essentially normal" hips and sacroiliac joint. (R. 150). Plaintiff continued to have pain in the "right hip and buttock area," and, on November 10, 2003, she was diagnosed with "DJD multiple sites," "[c]hronic low back syndrome with history of surgery," "[t]raumatic anthropathy," and "[i]schial bursitis." (R. 148).

Dr. Waeltz examined Plaintiff on December 24, 2003, for symptoms of "right buttocks pain which occasionally radiates into the right outer hip" and right leg pain. (R. 168). He found her to have lumbar strain with degenerative disc disease; functional range of motion in the lumbar; normal reflexes, muscle strength, and sensation in the legs; intact digital pulses; negative straight leg raise testing; and unremarkable range of hip and knee motion. (R. 169). Plaintiff was prescribed Voltaren and Soma, and she was referred for physical therapy. (R. 169).

On April 28, 2004, Plaintiff reported "slight discomfort" and a lack of relief from taking Vioxx. (R. 146). The impression was "DJD at multiple sites," "[c]hronic low back pain with a history of surgery," "[t]raumatic anthropathy," and "[t]endonitis of the left foot." (R. 146). Plaintiff was prescribed Bextra 20 mg for nighttime relief. (R. 146).

Dr. Chang began treating Plaintiff on August 22, 2006, for hypertension, dyslipidemia, back and neck pain, blurred vision, and a rash. (R. 179-180). Plaintiff was no longer taking ibuprofen and Flexeril because she felt they did not ease her discomfort, and the pain in her neck and upper back had increased since her last examination. (R. 179). Noting that Plaintiff was a "pleasant lady who appears well and in no apparent distress," Dr. Chang prescribed Skelaxin 800 for the neck and back pain. (R. 180). On September 7, 2006, Plaintiff visited Dr. Chang for an annual examination. (R. 176). At that time, Dr. Chang reported that Plaintiff's musculoskeletal functions were "[g]rossly normal." (R. 177). Dr. Chang saw Plaintiff for a follow-up of "multiple medical problems" and hunching of the back on October 2, 2006. (R. 174). Plaintiff was prescribed calcium, vitamin D, and Fosamax, and she was advised to increase weight bearing exercise. (R. 175).

F.   **SUMMARY OF THE ADMINISTRATIVE HEARING**

At the alleged date of onset, April 1, 2003, Plaintiff was approximately 54 years old. (R. 205). She has a high school education and past work experience in her husband's land clearing business. (R. 205-206, 210). When Plaintiff was working, the land clearing business was operated from Plaintiff's home. (R. 210). Plaintiff performed secretarial work and errands for the business, often picking up cases of oil weighing approximately forty pounds. (R. 215-217). Plaintiff sometimes has problems with gripping her right hand due to arthritis, but her left hand is better than the right. (R. 208). She has degenerative arthritis in the neck, but she has never had surgery on her neck. (R. 209-210). Plaintiff related that she experiences some stiffness when driving. (R. 209-210). She has had prior operations on her lower back, but the doctors never fused her spine. (R. 210, 214). Plaintiff was under the care of Dr. Linder in December 2000 for treatment of her back pain, and he restricted her to sedentary work. (R. 117-118, 217). She reported that she initially worked part-time while in pain, but she stopped working in April 2003. (R. 218). During the time when Plaintiff worked with pain, she would relieve the discomfort by taking Tylenol and laying down on a heating pad for approximately half an hour. (R. 219-220). Plaintiff also experienced pain in her toe and difficulties sleeping. (R. 220-221). In December 2003, Dr. Waeltz examined Plaintiff, and he diagnosed a "[l]umbar strain with degenerative joint disease." (R. 221). Plaintiff did not search for work outside of her husband's business after the examination by Dr. Waeltz. (R. 221). The ALJ noted that Plaintiff had been discharged from physical therapy at Heartland Rehabilitation. (R. 222). At the close of the hearing, the ALJ indicated that he would review the exhibits regarding Plaintiff's back pain and

suffering from degenerative joint disease. (R. 222). The ALJ did not hear testimony from a vocational expert.

## G. DISCUSSION

A finding that a person can perform her past relevant work ends the five-step evaluation process at Step Four. 20 CFR § 404.1520(a)(4). While the ALJ *may* use the testimony of a vocational expert to supplement a plaintiff's own testimony about how past relevant work was performed, he may also rely on other sources, including her own description of that work, and is not required to call a vocational expert. 20 CFR § 404.1560(b). Thus, any argument regarding a vocational expert is not well taken.

To support his determination that Plaintiff did not have any impairments that would prevent her from performing past relevant work, the ALJ referred to Plaintiff's testimony regarding her symptoms at the disability onset date. At the hearing, Plaintiff stated that she had lower back surgery prior to the onset date. She initially worked with the pain on a part-time basis, relieving her discomfort by taking Tylenol and laying down on a heating pad. Plaintiff further testified that she attempted to perform the same duties when she transitioned to a part-time status, but "[i]t just got a little more difficult." (R. 218). The ALJ also found support for his finding in the reports of Dr. Linder, who determined that Plaintiff could perform sedentary work. Additionally, Dr. Waeltz found that Plaintiff had a functional range of motion in her lumbar area.

At the hearing, Plaintiff testified that her past relevant work entailed secretarial functions for her husband's land clearing business. Plaintiff stated that she performed the payroll and banking functions for the company. In addition, Plaintiff picked up parts and other items that her

husband needed, and she stated that these tasks often involved lifting. Plaintiff did not operate the land clearing equipment, and she agreed that she was a "general utility player" in the company. (R. 217).

When a plaintiff has worked with an impairment over a period of years, the ALJ may properly consider the condition not disabling, absent a showing that the condition had significantly deteriorated. Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). See also Villarreal v. Apfel, 2000 WL 1135547 (S.D. Ala. 2000) (where plaintiff worked full time for fifteen years with pain following her surgery, this history is at odds with her claim that she suddenly became disabled by this pain on the date she quit her job).

In the present case, the ALJ found that Plaintiff worked with her pain for several years and was therefore not disabled. In support of this determination, the ALJ relied on Plaintiff's testimony at the hearing as well as the medical reports in the record. At the hearing, Plaintiff stated that she "was probably disabled" before the onset date of April 1, 2003, but that she could control her working schedule since it was a family owned and operated business. (R. 214). Additionally, Plaintiff testified that she is capable of driving, and the record reveals that, despite her pain, Plaintiff performs minor home maintenance, occasionally watches her grandchildren, attends to her own personal care, and cleans her own house. (R. 99). The ALJ also found support in the medical reports, which indicate that Plaintiff's husband is in a wheelchair and she spends a "[m]ajority of her energy and time . . . helping push him around" and taking him to his medical appointments. (R. 146, 149).

The record indicates that Plaintiff did seek medical treatment for her pain, but the ALJ

concluded that the treatment was routine and conservative in nature. Notably, Plaintiff did not seek medical care between the onset date of April 1, 2003 and October 2003. Plaintiff was prescribed several medications and physical therapy to treat her pain, and the medical reports indicate that these treatments have alleviated her symptoms. Moreover, the medical records reveal that Plaintiff was not in acute distress from her pain.

Thus, there is substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work.

Accordingly, it is

**ORDERED AND ADJUDGED:**

That the decision of the Commissioner denying benefits be AFFIRMED.

**DONE AND ORDERED** this  *12th*   day of August, 2010

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge